ORDERED.

Dated:  **August 26, 2020**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                              Case No. 8:17-bk-09606-MGW
                                                                      Chapter 11
Arthur Avery, Jr.,

     Debtor.
_____/

Arthur Avery, Jr.,                                          Adv. No. 8:18-ap-00127-MGW

     Plaintiff,

v.

Avery's Used Cars & Trucks, Inc., et al.,

     Defendants.
_____/

# FINDINGS OF
# FACT AND CONCLUSIONS OF LAW

When Arthur Avery Jr., former president of Avery's Used Cars & Trucks,

made his son, Arthur Avery III, the sole director of his company ten years ago, he

had no idea he was giving his son the power to remove him as president. But when the two had a falling out over the business, that's exactly what the son did.

And things only went downhill from there. Arthur Jr. refused to accept that he had been removed as president. So Avery's Used Cars & Trucks was forced to sue for a declaration in state court that Arthur Jr. had been removed as president; it was also forced to obtain a preliminary injunction from state court enjoining Arthur Jr. from acting on the company's behalf, which Arthur Jr. violated. Arthur Jr. also allegedly began competing with the company using a deceptively similar name: "Avery's Original Used Cars, Trucks & Buses."

This Court must now decide whether Avery's Used Cars & Trucks is entitled to a declaration that Arthur III properly removed Arthur Jr. as president of the company and a permanent injunction enjoining Arthur Jr. from acting on behalf of the company. The Court must also decide whether Arthur Jr. is liable to Avery's Used Cars & Trucks for various trademark violations, deceptive and unfair trade practices, and fraud for allegedly competing with Avery's Used Cars & Trucks using a similar name after he was removed as president, as well as whether he is liable to Avery's Used Cars & Trucks for misappropriating corporate assets.

In addition, the Court must decide claims that Arthur Jr. brought against Avery's Used Cars & Trucks and Arthur III—i.e., whether Avery's Used Cars & Trucks is liable to Arthur Jr. for improperly seizing and selling vehicles that Arthur Jr. claims he bought, as well as for unpaid distributions; and whether Arthur III is liable to repay Arthur Jr. for money Arthur Jr. gave him to buy a house.

After three days of trial, Avery's Used Cars & Trucks proved that Arthur III properly removed Arthur Jr. as president of the company. So Avery's Used Cars & Trucks is entitled to a declaration that Arthur Jr. was properly removed as president; a permanent injunction enjoining Arthur Jr. from filing paperwork with the Florida Secretary of State or acting on behalf of the company; and a claim against Arthur Jr. for $82,073.03 for misappropriating corporate assets and attorney's fees and costs. Otherwise, the parties failed to prove their remaining claims against each other.

## I.   FINDINGS OF FACT[1]

### A.   Avery's Used Cars & Trucks refurbishes and resells used cars, trucks, and buses.

For more than twenty years, Avery's Used Cars & Trucks has been in the business of buying, refurbishing, and then reselling used commercial vehicles—mostly school buses, box trucks, and heavy equipment. Over the years, Avery's Used Cars & Trucks has operated out of two locations—one in Lakeland, Florida and the other in Avon Park, Florida.

### B.   Arthur Avery Jr. incorporated Avery's Used Cars & Trucks, Inc. in 1997.

Before 1997, Arthur Avery, Jr.'s father operated Avery's Used Cars & Trucks as a sole proprietorship. Arthur Jr. inherited the business from his father when his father passed away, at which point, someone told Arthur Jr. he should incorporate

---

[1] The trial exhibits were filed in Adv. No. 8:18-ap-00127. *See* Adv. Doc. Nos. 50 – 54, 55, 59, 80 & 81. Exhibits filed by Avery's Used Cars & Trucks will be referred to as "AUCT Ex. __."

the business. So, in September 1997, Arthur Jr. filed articles of incorporation for Avery's Used Cars & Trucks.[2]

### C.    In 1998, Arthur Jr. makes his son, Arthur III, a director.

In the articles of incorporation, Arthur Jr. was listed as the company's sole director.[3] But that changed the following year. When Avery's Used Cars & Trucks filed its annual report for 1998, Arthur Avery III (Arthur Jr.'s son) and Phyllis Keen (Arthur Jr.'s future wife),[4] along with Arthur Jr., were listed as directors.[5] The 1998 annual report was signed by Arthur Jr.[6] From 1998 to 2006, Arthur Jr., Arthur III, and Keen served as the company's directors.[7]

In 2007, Robert Abbott became a 50% shareholder in the company. Upon becoming a shareholder, Abbott was also named a director, which meant that, as of March 2007, the company had four directors: Arthur Jr., Arthur III, Keen, and Abbott.[8]

---

[2] AUCT Ex. 1 at 2 – 9.

[3] *Id.* at 7.

[4] At some point, Keen and Arthur Jr. married. Recently, the parties divorced. For ease of reference, the Court will refer to Phyllis Keen Avery as Keen.

[5] *Id.* at 10.

[6] *Id.*

[7] *Id.* at 11 – 18.

[8] *Id.* at 19.

### D.      Arthur III becomes the company's sole director.

Although the company had four directors, it had no officers.[9] Sometime in 2007 or 2008, an accountant for the company told Arthur Jr. that the company had to have officers.

So, in January 2008, Arthur Jr. filed an annual report naming himself as president, Abbott as vice president, and Keen as secretary. Arthur III was listed as the company's sole director.[10] According to Abbott, Arthur Jr. told him that Arthur Jr. wanted to give Arthur III a role in the company but didn't want him to be a shareholder. Obviously unaware of the role a director plays, Arthur Jr. decided his son would be the sole director. To this day, Arthur III remains the company's sole director.

### E.      Arthur III and Abbott discover Arthur Jr. is mismanaging the company.

From 2007 to 2016, Avery's Used Cars & Trucks operated without incident with Arthur Jr. serving as the company's president. But in 2016, Arthur III and Abbott became concerned that Arthur Jr. was mismanaging the company. According to Arthur III and Abbott, Arthur Jr. was:

- running up hundreds of thousands of dollars in debt without justification or explanation;

- allowing non-licensed drivers to drive vehicles titled in the company's name;

---

[9] *Id.* at 11 – 19.

[10] *Id.* at 20.

- conducting sales not reflected in the company's books;

- transferring thousands of dollars from the company's line of credit into his personal account; and

- disabling vehicles at one of the company's locations.

## F.   Arthur III removes his father as company president.

Concerned about his father's potential mismanagement, Arthur III (as the company's sole director) held a board meeting on April 6, 2017 and voted to remove his father as president and name himself as president effective immediately.[11] On April 7, 2017, Arthur III filed an amended annual report that reflected the change in officers.

The same day, Avery's Used Cars & Trucks notified Arthur Jr. in writing that he had been removed as president and no longer had authority to transact business on the company's behalf or to take possession or use any of the company's assets.[12] Avery's Used Cars & Trucks, which had vacated the Lakeland location and consolidated its operations at Avon Park, also demanded that Arthur Jr. remove the company's name from any signage from the Lakeland property, cease using the

---

[11] AUCT Ex. 33.

[12] AUCT Ex. 34.

company's name or holding himself out as Avery's Used Cars & Trucks when

conducting business, and cease using the company's dealer's license to buy vehicles.[13]

### G.    Arthur Jr. refuses to go quietly.

On April 10, 2017, just three days after being notified that he was removed as

president, Arthur Jr. filed amendments to Avery's Used Cars & Truck's Articles of

Incorporation, purporting to remove Arthur III as a director, Abbott as vice

president, and Keen (by then Phyllis Avery) as secretary. Arthur Jr. backdated the

purported amendment to April 5—the day before Arthur III removed him as

president. Then, on April 14, 2017, Arthur Jr. filed a notice of corporate dissolution

purporting to dissolve Avery's Used Cars & Trucks.[14]

### H.    Arthur Jr. is enjoined from interfering with Avery's Used Cars & Trucks.

By filing the amendment to the Articles of Incorporation and the notice of

dissolution, Arthur Jr. was creating confusion as to who had authority to act on

behalf of Avery's Used Cars & Trucks. Avery's Used Cars & Trucks had no choice

but to sue Arthur Jr. in state court for a declaration that Arthur III—not Arthur Jr.—

was president of the company and that Arthur Jr. had no authority to act on the

company's behalf.[15] As part of its state court complaint, Avery's Used Cars & Trucks

also sought an injunction enjoining Arthur Jr. from filing any corporate documents

---

[13] *Id.*

[14] AUCT Ex. 1 at 31 – 36.

[15] Adv. No. 19-ap-00112, Adv. Doc. No. 1-1.

with the Florida Secretary of State; conducting business on the company's behalf; taking possession of or using the company's assets; and using signs identifying the company's name.[16]

On April 21, 2017, the state court held an evidentiary hearing on Avery's Used Cars & Truck's request for an injunction.[17] At the conclusion of the evidentiary hearing, the state court found that Arthur III had been the sole director since 2007; Arthur III had properly removed Arthur Jr. as president; Avery's Used Cars & Trucks had notified Arthur Jr. that he had been removed as president and had demanded that Arthur Jr. cease acting on behalf of or holding himself out as the company; and Arthur Jr. had improperly filed papers with the Florida Secretary of State seeking to remove Arthur III as director and to dissolve the company.[18] Based on those findings, the state court enjoined Arthur Jr. from (among other things) filing any corporate documents with the Florida Secretary of State; conducting business on the company's behalf; taking possession of or using the company's assets; and using signs identifying the company's name.[19]

---

[16] *Id.*

[17] AUCT Ex. 28 at 1.

[18] *Id.* at 1 – 4.

[19] *Id.* at 4 – 5.

The temporary injunction issued by the state court was conditioned on Avery's Used Cars & Truck's posting a $360,000 bond.[20] The company, however, had difficulty obtaining a bond. So the company requested that it be allowed to post an irrevocable letter of credit instead. The state court granted Avery's Used Cars & Truck's request, and the company then posted an irrevocable letter of credit issued by Wauchula State Bank.[21]

## I.    Arthur Jr. is held in contempt for violating the state court injunction.

As part of the injunction, Arthur Jr. was required to allow Avery's Used Cars & Trucks to pick up its books and records, as well as any assets (including vehicles) at the Lakeland location.[22] Before the injunction hearing, Avery's Used Cars & Trucks had managed to retrieve some vehicles from the Lakeland location, though some vehicles still remained.

After the injunction hearing, Arthur III went out to the Lakeland location to retrieve the remaining vehicles. But Arthur Jr. used a truck to block the gate, preventing Arthur III from retrieving the remaining vehicles.

The injunction also required Arthur Jr. to transfer telephone numbers registered to Avery's Used Cars & Trucks back to the company.[23] Sometime

---

[20] AUCT Ex. 28 at 5.

[21] Adv. No. 19-ap-00112, Adv. Doc. Nos. 2-27 & 2-32.

[22] *Id.* at 5.

[23] *Id.*

before the injunction hearing, Arthur Jr. apparently had transferred the company's telephone numbers to himself. Arthur Jr., however, failed to transfer the telephone numbers back to the company.

Although the state court declined to hold Arthur Jr. in contempt, it did order him to give Avery's Used Cars & Trucks access to the Lakeland location to retrieve all remaining vehicles (as well as all its equipment, tools, and other assets) and to transfer the telephone numbers back to the company.

Despite the trial court's ruling, Arthur Jr. again blocked access to the Lakeland location, this time by locking the gates shut. When Arthur III cut the chains and gained access, he found that Arthur Jr. had disabled the vehicles by cutting the wires needed to start them. Making matters worse, Avery's Used Cars & Trucks also discovered that some buses were missing, not to mention that Arthur Jr. had also failed to transfer back the telephone numbers and had apparently been holding himself out as, and buying parts in the name of, Avery's Used Cars & Trucks.

So the state court ordered Arthur Jr. to show cause why he should not be held in contempt for violating the court's injunction. After an evidentiary hearing on June 15, 2017, the state court held Arthur Jr. in contempt for disabling the vehicles and failing to transfer the telephone numbers back to the

company. The state court also later awarded Avery's Used Cars & Trucks $13,607.85 in attorney's fees and costs.[24]

###### J.    Arthur Avery Jr. and Avery's Used Cars & Trucks file for bankruptcy.

On November 13, 2017, six weeks after the state court entered a $13,607.85 judgment against him, Arthur Jr. filed for chapter 11 bankruptcy.[25] Avery's Used Cars & Trucks filed a $500,000 proof of claim (Claim No. 16) against Arthur Jr. in his bankruptcy case.[26] Arthur Jr., in turn, filed an adversary proceeding against Avery's Used Cars & Trucks objecting to the company's proof of claim and seeking to recover damages against the company,[27] which counterclaimed back against him.[28]

On December 4, 2018, Avery's Used Cars & Trucks filed its own chapter 11 case.[29] Arthur Jr. filed a proof of claim in the company's bankruptcy case,[30] which Avery's Used Cars & Trucks objected to.[31] The company then removed its state court action to bankruptcy court.[32]

---

[24] AUCT Ex. 30.

[25] *In re Arthur B. Avery, Jr.*, Case No. 8:17-bk-09606-MGW, Doc. No. 1.

[26] Case No. 8:17-bk-09606-MGW, Claim No. 16.

[27] *Avery, Jr. v. Avery's Used Cars & Trucks, Inc., et al.*, Adv. No. 8:18-ap-00127, Adv. Doc. Nos. 1 & 17.

[28] Adv. No. 18-ap-00127, Adv. Doc. No. 20.

[29] *In re Avery's Used Cars & Trucks, Inc.*, Case No. 8:18-bk-10428-MGW, Doc. No. 1.

[30] Case No. 8:18-bk-10428-MGW, Claim No. 7.

[31] Case No. 8:18-bk-10428-MGW, Doc. No. 52.

[32] *Avery's Used Cars & Trucks, Inc. v. Avery, Jr.*, Adv. No. 8:19-ap-00112, Adv. Doc. No. 1.

This Court consolidated the various claim objections and adversary complaints for trial.[33] The Court tried the claim objections and adversary proceedings over three days on December 18 – 20, 2019.

## II.   CONCLUSIONS OF LAW

The procedural posture of this proceeding is complicated. Suffice it to say that Avery's Used Cars & Trucks has claims pending against Arthur Jr. for declaratory relief; injunctive relief; violation of Florida's Deceptive and Unfair Trade Practices Act; violation of the Lanham Act; violation of Florida's trademark statute; violation of the company's common law trademark; fraud; and misappropriation of corporate assets.[34]

Arthur Jr. has claims against Avery's Used Cars & Trucks for amounts owed for various vehicles that he claims the company wrongfully seized from him and sold, as well as for unpaid distributions.[35] He also has a claim against Arthur III for breach of an oral contract.[36]

---

[33] Adv. No. 18-ap-00127, Adv. Doc. No. 44; Adv. No. 19-ap-00112, Adv. Doc. No. 13.

[34] Case No. 8:17-bk-09606-MGW, Claim No. 16; Adv. No. 19-ap-00112, Adv. Doc. No. 1; Adv. No. 18-ap-00127, Adv. Doc. No. 20.

[35] Case No. 8:18-bk-10428-MGW, Claim No. 7; Adv. No. 18-ap-00127, Adv. Doc. No. 17.

[36] Case No. 8:18-bk-10428-MGW, Claim No. 7; Adv. No. 18-ap-00127, Adv. Doc. No. 17.

**A.    Avery's Used Cars & Trucks met its burden of proof on its declaratory relief claim.**

In its count for declaratory relief, Avery's Used Cars & Trucks asks the Court to declare that Arthur III properly removed Arthur Jr. as president of the company, that the amendments to the Articles of Incorporation that Arthur Jr. filed on April 12, 2017 had no legal effect, and that, because he is no longer president, Arthur Jr. has no authority to transact business on behalf of Avery's Used Cars & Trucks.[37]

There's no real question that Arthur III, as sole director, voted to remove Arthur Jr. as president. And it goes without saying, of course, that the sole director of a company can remove the company's president.[38] The only real question here is whether Arthur III was the company's sole director at the time he removed Arthur Jr. as president.

Looking at the company's annual reports, which were offered into evidence at trial,[39] there's no question he was. According to the company's 1998 annual report, filed one year after the company was incorporated, Arthur III was named a director of the company, along with Arthur Jr. and Keen.[40] Those three served as the sole corporate directors until 2007, when Abbott became a 50% shareholder and was

---

[37] Adv. No. 19-ap-00112, Adv. Doc. No. 1-1 at 5 – 6.

[38] § 607.0842, Fla. Stat. (providing that an officer may be removed at any time with or without cause by the board of directors).

[39] AUCT Ex. 1.

[40] *Id.* at 10.

named a director of the company.[41] In 2008, however, Arthur Jr., Abbott, and Keen were all removed as directors (and instead named officers of the company), leaving Arthur III as the company's sole director.[42]

But Arthur Jr. contends the Court should not rely on the annual reports in determining that Arthur III was a corporate director. In fact, Arthur Jr. claims the 1998 annual report naming Arthur III as a director was a mistake. If you look at the 1998 annual report, Arthur Jr. is listed as a director, with his address at 2901 Swindell Road, Lakeland, Florida.[43] Below that, is "Arthur B. Avery III, same as above."[44] Arthur Jr. says that "same as above" was intended to mean that Arthur III's address was the same as Arthur Jr.'s—not that Arthur III was serving in the same role (i.e., corporate director) as Avery Jr. There are two problems with that defense.

First, the Court doesn't find that explanation credible for one obvious reason: If Arthur Jr. had no intention of naming Arthur III as a director, then why was Arthur III listed under the column for "Officers and Directors"? The only reason to list him on the form was if he was going to be an officer or director (and there's no suggestion Arthur Jr. meant to name Arthur III as an officer rather than a director).

---

[41] *Id.* at 10 – 19.

[42] *Id.* at 20.

[43] *Id.* at 10.

[44] *Id.*

Second, even if the Court accepted Arthur Jr.'s explanation that he didn't intend on naming Arthur III as a director when he filed the 1998 annual report, Arthur Jr. filed other annual reports listing Arthur III as a director. In particular, the 2001 annual report listing Arthur III as a director was signed by Arthur Jr.[45] So, too, was the 2008 annual report that removed Arthur Jr., Abbott, and Keen as directors, leaving Arthur III as the sole director.[46] To the extent the 1998 annual report was a mistake, Arthur Jr. later ratified that mistake.

To be sure, the Court is aware that Arthur Jr. claims he didn't physically sign the 2001 annual report and that he didn't electronically sign or file the 2008 annual report. But if you compare Arthur Jr.'s signature on the 2001 annual report[47] with the signature on the amendment to the Articles of Incorporation,[48] which Arthur Jr. admittedly filed, the signatures are virtually identical. And Arthur III credibly testified that he electronically filed the 2008 (and other annual reports) with Arthur Jr.'s permission. All this, by the way, is corroborated by the testimony of Robert Abbott, who testified that Arthur Jr. named Arthur III a director because he wanted to give Arthur III a role in the company other than shareholder. So the Court is

---

[45] *Id.* at 13.

[46] *Id.* at 20. Unlike the 2001 annual report, which was signed by hand, the 2008 annual report was filed electronically.

[47] *Id.* at 13.

[48] Adv. No. 19-ap-00112, Adv. Doc. No. 1-1 at Ex. F.

convinced that Arthur Jr. in fact filed the annual reports naming Arthur III as a director.

It may be true that Arthur Jr. didn't fully understand the ramifications of naming Arthur III as the company's sole director. He certainly didn't anticipate that he was giving Arthur III the sole authority to remove him as president should a dispute over management of the company arise. But that's, in fact, what he did. Whether or not he understood the consequences of what he was doing, the fact is that Arthur Jr. named Arthur III as the company's sole director in 2008.

As the company's sole director, Arthur III had the authority to remove Arthur Jr. as president, which he did. Once Arthur Jr. was removed as president, he no longer had any authority to amend the Articles of Incorporation or transact business on behalf of Avery's Used Cars & Trucks. Avery's Used Cars & Trucks is therefore entitled to a declaration that Arthur Jr. was properly removed as president of the company, that the amendments to the Articles of Incorporation that Arthur Jr. filed on April 12, 2017 had no legal effect, and that, because he is no longer president, Arthur Jr. no longer has authority to transact business on behalf of Avery's Used Cars & Trucks.

### B. Avery's Used Cars & Trucks met its burden of proof on its claim for permanent injunctive relief.

Before Avery's Used Cars & Trucks' claims were removed from state court, the state court issued a preliminary injunction enjoining Arthur Jr. from filing any corporate documents with the Florida Secretary of State; conducting business on the

company's behalf; taking possession of or using the company's assets; and using signs identifying the company's name.[49] Avery's Used Cars & Trucks now seeks to make that temporary injunction permanent.

The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that the plaintiff must show actual—rather than a substantial likelihood of—success on the merits.[50] To prevail on its claim for a permanent injunction, Avery's Used Cars & Trucks must show that (1) it has suffered an irreparable injury; (2) that its remedies at law are inadequate; (3) the balance of hardships weigh in its favor; and (4) a permanent injunction would not disserve the public interest.[51] Here, Avery's Used Cars & Trucks has met all the requirements for a permanent injunction.

Most important, it prevailed on its declaratory judgment claim. This Court has declared that Arthur Jr. was properly removed as president of the company and no longer has authority to file documents with the Florida Secretary of State or transact business on behalf of the company. Moreover, it goes without saying that the company will be irreparably harmed if Arthur Jr. acts on behalf of the company without authority. And that harm cannot be remedied with monetary damages. Arthur Jr., on the other hand, will not be harmed at all if he is forbidden from doing

---

[49] AUCT Ex. 28.

[50] *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

[51] *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

something he has no authority to do (i.e., acting on behalf of the company). Finally, it is in the public interest to prevent Arthur Jr. from acting on behalf of the company when he has no authority to do so.

Avery's Used Cars & Trucks is therefore entitled to an injunction permanently enjoining Arthur Jr. from (1) filing any documents with the Florida Secretary of State on the company's behalf; (2) conducting business on the company's behalf; (3) entering into contracts, sales, purchases, and other agreements on the company's behalf; (4) taking possession of the company's assets; and (5) using any advertisements or signs identifying Avery's Used Cars & Trucks.

Because Avery's Used Cars & Trucks is entitled to a permanent injunction, the irrevocable letter of credit that the company posted to obtain the temporary injunction should be released and discharged. The purpose of that irrevocable letter of credit was to cover any costs and damages sustained by Arthur Jr. in the event the state court wrongfully enjoined him from (among other things) filing documents with the Florida Secretary of State or conducting business on behalf of Avery's Used Cars & Trucks. As this Court has just explained, Arthur Jr. was not wrongfully enjoined. The irrevocable letter of credit should therefore be released and discharged.

### C.    Avery's Used Cars & Trucks failed to meet its burden of proof on its trademark claims.

In all, Avery's Used Cars & Trucks alleged three trademark claims against Arthur Jr.: violation of the Lanham Act, violation of Florida's trademark statute;

and interference with Avery's Used Cars & Trucks' common law trademark.[52] All three claims hinge on the allegation that, after being removed from the company, Arthur Jr. began transacting business using a deceptively similar name: "Avery's Original Used Cars, Trucks & Buses."[53]

The Court is receptive to the argument that the name "Avery's Original Used Cars, Trucks & Buses" is deceptively similar to Avery's Used Cars & Trucks and that the similarity in names is likely to cause confusion. Assuming the name is deceptively similar, to prevail on its trademark claims, Avery's Used Cars & Trucks was also required to prove at trial that Arthur Jr. was or is, in fact, transacting business under that deceptively similar name. Avery's Used Cars & Trucks, however, failed to do so.

To prove its claim, the company points to the fact that Arthur Jr.'s chapter 11 petition indicates that Arthur Jr. is doing business as "Avery's Original Cars, Trucks & Buses." But, even if that fact alone was sufficient to prove Arthur Jr. was using a deceptively similar name for trademark purposes, Avery's Used Cars & Trucks never admitted Arthur's Jr.'s chapter 11 petition into evidence. Nor did Avery's Used Cars & Trucks offer any other competent, substantial evidence showing that Arthur Jr. was transacting business under a deceptively similar name. Absent that evidence,

---

[52] Case No. 8:17-bk-09606-MGW, Claim No. 16.

[53] Counterclaim, Adv. No. 18-ap-00127, Adv. Doc. No. 20 at ¶¶ 45, 50 & 54.

Avery's Used Cars & Trucks is not entitled to judgment on its various trademark claims.

**D.   Avery's Used Cars & Trucks failed to meet its burden of proof on its FDUPTA and fraud claims.**

As for its FDUPTA claim, Avery's Used Cars & Trucks alleges that Arthur Jr. (among other things):

- improperly filed documents with the Florida Secretary of State purporting to remove Arthur III as director and purporting to dissolve the company;

- kept the company from retrieving its vehicles;

- refused to transfer telephone numbers back to the company;

- registered "Avery's Original Used Cars, Trucks & Buses" as a fictitious name to create confusion among Avery's Used Cars & Trucks' customers and vendors;

- bought and sold vehicles in direct competition with Avery's Used Cars & Trucks.

As discussed above, Avery's Used Cars & Trucks failed to put on any competent, substantial evidence at trial that Arthur Jr. was conducting business using the name "Avery's Original Used Cars, Trucks & Buses." Nor did it put on any evidence that he was buying and selling vehicles in direct competition with Avery's Used Cars & Trucks. The company did put on evidence that Arthur Jr. obstructed its efforts to retrieve its vehicles and phone numbers, but the company did not put on

competent, substantial evidence of any damages it suffered as a result of Arthur Jr.'s obstruction.

The closest Avery's Used Cars & Trucks comes to putting on evidence of damages is two tax returns it offered into evidence: the company's tax returns for 2016 and 2017.[54] Those two returns show that Avery's Used Cars & Truck's gross profit decreased from $602,522 in 2016 to $572,249 in 2017—roughly a $30,000 decrease. Presumably, Avery's Used Cars & Trucks believes those tax returns are evidence that Arthur Jr.'s deceptive and unfair trade practices caused the company to lose profits.

"Lost profits must be proven with a reasonable degree of certainty before the loss is recoverable."[55] For Avery's Used Cars & Trucks to prove lost profits with a reasonable degree of certainty, the "mind of a prudent impartial person should be satisfied that the damages are not the result of speculation or conjecture."[56] Evidence of a $30,000 decrease in gross profits from one year to the next, standing alone, does not even come close to meeting that standard. Avery's Used Cars & Trucks therefore is not entitled to recover on its FDUTPA claim.

---

[54] AUCT Exs. 17 & 18.

[55] *ICMfg & Assocs., Inc. v. The Bare Board Group (In re ICMfg & Assocs., Inc.)*, 602 B.R. 780, 785 (Bankr. M.D. Fla. 2018) (quoting *ICMfg & Assocs., Inc. v. Bare Board Group, Inc.*, 238 So. 2d 326, 336 (Fla. 2d DCA 2017)).

[56] *Id.*

Avery's Used Cars & Trucks' fraud claim suffers from the same defect. To begin with, Avery's Used Cars & Trucks put on scant evidence that Arthur Jr. represented to third parties that he had the right to buy and sell vehicles, as well as parts and equipment, in the company's name. But even if Avery's Used Cars & Trucks had proven Arthur Jr. engaged in that conduct, it nonetheless failed to satisfy the mind of the prudent impartial person that its claimed $30,000 in lost profits are not speculative. So Avery's Used Cars & Trucks is not entitled to recover on its fraud claim.

### E.    Avery's Used Cars & Trucks met its burden of proof on part of its misappropriation of corporate assets claim.

At trial, Arthur III and Robert Abbott testified that the company was unable to retrieve vehicles, tools, and parts from the company's former Lakeland location after the state court issued an injunction because the Sheriff would not allow the company to take those items, and Arthur Jr. refused to turn them over.

In particular, Arthur III testified that Arthur Jr. refused to turn over seventeen vehicles after he was removed from the company and that the value of those seventeen vehicles was $60,714.99.[57] The company also presented evidence that the company had purchased $7,651.19 in tools during the two years before Arthur Jr. was removed from the company and that Arthur Jr. refused to turn those tools over.[58]

---

[57] AUCT Ex. 3.

[58] AUCT Ex. 6. Avery's Used Cars & Trucks claims the total purchase price for the tools (as reflected in the invoices included in Exhibit 6) is $8,518.12. Adv. No. 18-ap-00127, Adv. Doc. 88. By the

The Court concludes that the testimony and evidence regarding the unreturned vehicles and $7,651.19 in tools was credible and sufficient to carry the company's burden of proof.

The Court, however, did not find credible Arthur III's testimony that there was more than $100,000 in parts remaining at the Lakeland location. Other than Arthur III's testimony, the only evidence Avery's Used Cars & Trucks offered was forty-five pages of invoices for parts that the company claims remain at the Lakeland location.[59] As the Court pointed out at trial, there's no way of knowing whether, as Arthur Jr. contends, some of those parts were used by the company or whether those parts are still remaining at the Lakeland property.

To prove that the parts are there, Arthur III testified that there were ten school buses (with seats removed) and four or five forty-foot storage sheds chock full of parts. Assuming that's the case, Arthur III could not—and did not—credibly testify whether any one of the parts listed on the forty-five pages of invoices is in one of the ten school buses or four or five storage sheds. Avery's Used Cars & Trucks therefore is not entitled to the $100,000 for unreturned parts.

Nor is Avery's Used Cars & Trucks entitled to be reimbursed for improvements made to the Lakeland location. At the time Avery's Used Cars & Trucks was operating at the Lakeland location, the company apparently did nearly

---

Court's math, the invoices total $8,031.19. And one of the invoices is plainly a duplicate. So the total is $7,651.19.

[59] AUCT Ex. 5.

$11,000 in asphalt work to the property. Avery's Used Cars & Trucks complains Arthur Jr. never reimbursed the company for the value of the asphalt work after the company vacated the location.

But Avery's Used Cars & Trucks never explains why Arthur Jr. would have reimbursed the company for the asphalt work. There was no evidence at trial that the work was unnecessary. And it was Robert Abbott's testimony that it was he and Arthur III—not Arthur Jr.—who decided to abandon the Lakeland location and consolidate operations at the Avon Park location. Given that, there is no basis for requiring Arthur Jr. to reimburse the company for the asphalt work.

The final remaining misappropriation claim has to do with $50,000 that Arthur Jr. supposedly withdrew from the company's line of credit and deposited into his own account. Although there was some testimony to that effect, there were no specifics given. And noticeably absent at trial were any records reflecting this withdrawal from the company account and deposit into Arthur Jr.'s personal account. Thus, the company is not entitled to recover the alleged $50,000 unauthorized withdrawal from Arthur Jr.

To recap, Arthur Jr. misappropriated $60,714.99 in unreturned vehicles and $7,651.19 in unreturned parts. In all, then, Avery's Used Cars & Trucks is entitled to recover $68,366.18 from Arthur Jr. for misappropriated assets.

**F.      Avery's Used Cars & Trucks proved it was entitled to
attorney's fees and costs incurred in the state court action.**

As part of its proof of claim, Avery's Used Cars & Trucks seeks $13,706.85 in

fees and costs it incurred obtaining and enforcing the state court injunction.[60] There

is no dispute that the state court awarded Avery's Used Cars & Trucks its reasonable

fees and costs incurred obtaining and enforcing the injunction.[61] Avery's Used Cars

& Trucks is therefore entitled to $13,706.85 in attorney's fees and costs.

**F.      Arthur Jr. failed to meet the burden of proof on his claims.**

Arthur Jr. has three claims against Avery's Used Cars & Trucks. Two of

the claims relate to vehicles that Arthur Jr. claims he bought and that Avery's

Used Cars & Trucks wrongfully seized and sold. The third claim is for unpaid

distributions. Arthur Jr. also has a claim against Arthur III for breach of an

alleged oral contract.

**1.      Arthur Jr. failed to prove he was entitled to
amounts owed for buses and vehicles that
allegedly belonged to him.**

Arthur Jr. claims that before he was removed from the company, he bought

three 2005 Bluebird school buses for $16,500. He also claims to have bought another

sixteen vehicles (school buses, trucks, an ambulance, and a trolley) for roughly

$73,000 after being removed from the company. According to Arthur Jr., when

---

[60] Case No. 8:17-bk-09606-MGW, Claim No. 16.

[61] AUCT Ex. 30.

Arthur III came to his property in Lakeland to remove the company's vehicles, he wrongfully removed the three 2005 Bluebird school buses and sixteen other vehicles that Arthur Jr. claims he bought.

Arthur Jr. contends that Avery's Used Cars & Trucks has since sold all nineteen vehicles. Arthur Jr. alleges that Avery's Used Cars & Trucks received $60,000 for the three 2005 Bluebird buses; plus $54,000 for six 2002 Bluebird buses; and $18,000 for two 2005 box trucks. Although Arthur Jr. alleges Avery's Used Cars & Trucks sold the remaining vehicles, he doesn't know how much the company got for them. Arthur Jr. alleges he is entitled to the proceeds from the sale of those vehicles because they belong to him.

As an initial matter, the Court rejects the notion that the vehicles belong to Arthur Jr. The evidence at trial showed that all the vehicles were titled in the company's name. In fact, Arthur Jr. concedes as much, acknowledging that he used his old dealer's license (inadvertently he says) when he bought the vehicles. Putting aside that the Court doesn't find Arthur Jr.'s explanation that he inadvertently used his old dealer's license credible, the fact that the vehicles were all titled in the company's name is dispositive of the ownership issue.

But that, by itself, doesn't mean that Arthur Jr. is not entitled to any proceeds from the sale of the vehicles. As Arthur III testified at trial, it was not uncommon for him, Arthur Jr., or Abbott to buy vehicles using their own funds, in which case the company would treat the funds used to buy the vehicle as a loan. In situations where Arthur Jr., Arthur III, or Abbott advanced the funds to buy the vehicle, those funds

would be repaid out of the proceeds from the sale of that particular vehicle, with whoever advanced the funds splitting any profit 50/50 with the company.

If Arthur Jr. had shown that he used his own funds to buy the nineteen vehicles that are the subject of his claim and that Avery's Used Cars & Trucks later improperly seized and sold those vehicles, Arthur Jr. would potentially have a claim for reimbursement of the amounts he paid for the vehicles, plus 50% of any profits. But Arthur Jr. failed to connect those dots for the Court.

For starters, Arthur Jr. failed to prove that he used his own funds to buy the nineteen vehicles; he also failed to prove that those nineteen vehicles were included among the vehicles that Avery's Used Cars & Trucks removed from the Lakeland location; and he failed to show that Avery's Used Cars & Trucks actually sold those vehicles and how much money the company got for them. Because he was unable to connect those dots, Arthur Jr. is not entitled to any of the proceeds from the sale of the vehicles.

### 2. Arthur Jr. failed to prove that he was entitled to any unpaid distributions.

The entire basis of Arthur Jr.'s claims for unpaid distributions is that Abbott allegedly took $40,000 in shareholder draws in 2016. Because Abbott took shareholder draws, Arthur Jr. contends that he should have been entitled to distributions too. But the evidence at trial was that any distributions Abbott received in 2016 or afterward were to reimburse him for funds he advanced to buy vehicles and for his 50% share of the profits for the sale of any such vehicle. Because Arthur

Jr. failed to prove he advanced any funds used to buy, refurbish, and resell any vehicles, Arthur Jr. failed to prove he was entitled to any shareholder distributions.

### 3.    Arthur Jr. failed to prove his breach of contract claim.

According to Arthur Jr., he loaned Arthur III $67,200 to buy a home located at 2004 Via Roma Court, Plant City, Florida, and Arthur III promised to repay the loan when he sold the house. But, as Arthur Jr. tells the story, when Arthur III sold his home in 2017, he failed to repay the loan. So Arthur Jr. seeks a judgment for the $67,200.

For his part, Arthur III doesn't dispute he received the money from his dad; he simply says it was a college graduation gift. He testified to that effect at trial, as did Arthur Jr.'s former spouse (Phyllis Keen), who is not a party to this proceeding. In particular, Keen testified that Arthur Jr. wanted to help his son buy a house because his dad had done the same for him.

Arthur Jr.'s breach of contract claim comes down to a credibility determination, and on balance, the Court finds Arthur III's and Keen's testimony—in particular, Keen's testimony—that the money was a gift more credible than Arthur Jr.'s testimony that it was a loan. Arthur III is therefore entitled to judgment on Arthur Jr.'s breach of contract claim.

III.   CONCLUSION

The Court concludes that Avery's Used Cars & Trucks is entitled to a final judgment for declaratory and permanent injunctive relief, as well as an allowed claim against Arthur Jr.'s estate for $82,073.03. The Court concludes that Arthur Jr. is not entitled to recover from Avery's Used Cars & Trucks and that his proof of claim should be disallowed in its entirety. The Court will enter separate final judgment and orders consistent with these Findings of Fact and Conclusions of Law.

Attorney Pierce J. Guard, Jr. is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the order.